IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

David Lee Wall,                          )        Civil Action No. 8:15-cv-02193-RMG-JDA
                        Plaintiff,       )
                                         )
              vs.                        )        **REPORT AND RECOMMENDATION**
                                         )        **OF MAGISTRATE JUDGE**
Carolyn W. Colvin,                       )
Commissioner of Social Security,         )
                                         )
                        Defendant.       )

This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a), D.S.C.[1]  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of Defendant Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2]  For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1]A Report and Recommendation is being filed in this case in which one or both parties declined to consent to disposition by a magistrate judge.

[2]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

## **PROCEDURAL HISTORY**

Plaintiff protectively filed applications for DIB and SSI in May 2010, alleging disability as of January 1, 2006. [R. 106–15.][3] The claims were denied initially and on reconsideration by the Social Security Administration ("the Administration"). [R. 47–53.] Plaintiff requested a hearing before an administrative law judge ("ALJ"), and on August 4, 2011, ALJ Edward T. Morriss held a hearing on Plaintiff's claims. [R. 22–42.] The ALJ issued a decision on October 19, 2011, finding Plaintiff not disabled under sections 216(i) and 223(d) of the Social Security Act ("the Act"). [R. 5–15.]

At Step 1,[4] the ALJ found Plaintiff last met the insured status requirements of the Act on December 31, 2011, and had not engaged in substantial gainful activity since January 1, 2006, his alleged onset date. [R. 10, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had a severe impairment of status-post cervical fusion. [R. 10, Finding 3.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 10, Finding 4.] The ALJ specifically considered Listing 1.04. [R. 10-11.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

---

[3]Prior to these applications, Plaintiff applied for DIB on December 7, 2007, alleging an onset date of March 15, 2006. [R. 122.] The Commissioner denied that claim on initial review in January 2008. [R. 54–57.] Plaintiff filed a second application for DIB on February 27, 2009, alleging an onset date of March 15, 2006. [R. 146.] The Commissioner denied Plaintiff's second application in April 2009. [R. 58–61.]

[4]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

> I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours in an 8-hour day, except that the claimant can never climb ladders and can perform occasional overhead reaching, bilaterally.

[R. 11, Finding 5.]  Based on this RFC, at Step 4, the ALJ determined Plaintiff was unable to perform his past relevant work.  [R. 13, Finding 6.]  At Step 5, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  [R. 14, Finding 10].  Consequently, the ALJ concluded Plaintiff was not under a disability as defined by the Act from the alleged onset date of January 1, 2006, through the date of the decision.  [R. 14, Finding 11.]

Plaintiff requested Appeals Council review of the ALJ's decision, but the Appeals Council declined.  [R. 1-3.]  Plaintiff filed an action for judicial review on November 1, 2012, and, on February 7, 2014, this Court remanded the case to the Commissioner for a proper evaluation of Plaintiff's credibility, specifically taking into account issues set forth in the Chronic Pain rules, and for proper application of the Treating Physician Rule to expert opinions and particularly Dr. Netherton's opinions.  [R. 658–70; *see also* Order, *Wall v. Colvin*, C/A No. 8:12-3152-RMG (D.S.C. Feb. 7, 2014), ECF No. 26.]

On March 11, 2014, the Appeals Council vacated the final decision of the Commissioner and remanded the matter to the ALJ. [R. 633.] The Appeals Council also associated a subsequent claim filed by Plaintiff on September 28, 2012, and directed the ALJ to issue a new decision based on the associated claims. [*Id*.] On December 3, 2014, Plaintiff appeared and testified before the same ALJ and, on March 26, 2015, the ALJ

3

issued a subsequent decision finding Plaintiff was not under a disability from January 1, 2006, through the date of the decision. [R. 512–22, 533–47.]

At Step 1, the ALJ found Plaintiff last met the insured status requirements of the Act on December 31, 2011, and had not engaged in substantial gainful activity since January 1, 2006, his alleged onset date. [R. 514, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had a severe impairment of degenerative disc disease status post cervical spine surgery. [R. 514, Finding 3.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 515, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is precluded from climbing ladders, ropes, and scaffolds and is limited in the ability to push/pull with the upper extremities. He may perform no more than occasional overhead lifting with the bilateral upper extremities and no more than frequent handling (gross manipulation) with the left upper extremity.

[R. 515, Finding 5.] Based on this RFC, at Step 4, the ALJ determined Plaintiff was unable to perform his past relevant work. [R. 520, Finding 6.] At Step 5, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. [R. 521, Finding 10]. Consequently, the ALJ concluded Plaintiff was not under a disability as defined by the Act from the alleged onset date of January 1, 2006, through the date of the decision. [R. 521, Finding 11.] Plaintiff filed the instant action for

judicial review on May 29, 2015; thus, this case is before this Court for the second time. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence. [Doc 15.] Specifically, Plaintiff contends the ALJ:

(1)     improperly dismissed Plaintiff's headaches "out of hand" and failed to find that Plaintiff's headaches had a impact on his RFC analysis [*id*. at 8–10]; and

(2)     failed to properly weigh opinion evidence of record in accordance with SSR 96-2p [*id*. at 10–12].

Plaintiff requests that his case be remanded for proper adjudication in accordance with the Commissioner's own rules and the law of this circuit. [*Id*. at 12.]

The Commissioner, on the other hand, contends the ALJ's decision is supported by substantial evidence.  [Doc. 16.]  Specifically, the Commissioner argues that the ALJ:

(1)     properly found Plaintiff's headaches did not cause more than minimal limitations in Plaintiff's ability to perform basic work activities [*id*. at 14–16]; and

(2)     reasonably evaluated the medical opinions of record, giving less weight to those opinions which were inconsistent with the evidence [*id*. at 16–19].

The Commissioner contends that the decision should be affirmed.  [*Id.* at 19.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence.  *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Myers v. Califano,*

611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light*

7

*Co. v. Lorion*, 470 U.S. 729, 744 (1985);*see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

    In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C.

8

§ 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

9

has lasted or can be expected to last for a continuous period
of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations

have reduced the statutory definition of disability to a series of five sequential questions.

*See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency"

in considering disability claims).   The ALJ must consider whether (1) the claimant is

engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the

impairment meets or equals an impairment included in the Administration's Official Listings

of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents

the claimant from performing past relevant work; and (5) the impairment prevents the

claimant from having substantial gainful employment.   20 C.F.R. §§ 404.1520, 416.920.

Through the fourth step, the burden of production and proof is on the claimant.   *Grant v.

Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).   The claimant must prove disability on or

before the last day of her insured status to receive disability benefits.   *Everett v. Sec'y of

Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).   If the inquiry reaches step

five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the

national economy that the claimant can perform, considering the claimant's age, education,

and work experience.   *Grant*, 699 F.2d at 191.   If at any step of the evaluation the ALJ can

find an individual is disabled or not disabled, further inquiry is unnecessary.   20 C.F.R. §§

404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575, 416.974–.975.

B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* §§ 404.1521, 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined

11

impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.**    ***Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[6]   20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

**D.**    ***Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[7] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

**E.**    ***Other Work***

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could

---

[6]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[7]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

perform other work that exists in the national economy. *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[8]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national

---

[8]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. 20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.     Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but

14

the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. §§ 404.1527(d), 416.927(d).

However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the

16

ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1528, 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable

> objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.  Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such

determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Consideration of Medical Opinion Evidence**

Plaintiff challenges the ALJ's weighing of the medical evidence of record, specifically as it relates to Plaintiff's ability to reach overhead. Plaintiff contends the "ALJ arbitrarily disagreed with Dr. Khoury's restrictions" without articulating "any support and clearly asserting his own lay opinion" in finding that Plaintiff could occasionally reach overhead based on a 15% impairment to his spine. [Doc. 15 at 11.] Additionally, Plaintiff challenges the ALJ's dismissal of Dr. Netherton's restrictions based on a finding that Dr. Netherton did not consider Plaintiff's noncompliance, lack of motivation, and reported dependence on medication. [*Id*.] This Court agrees with Plaintiff that the ALJ's decision is not supported by substantial evidence, and the ALJ did not properly apply the Treating Physician Rule to the medical opinion evidence.

### *Dr. Khoury's Restrictions*

On or about March 7, 2006, Plaintiff was seen by Dr. Khoury of Charleston Neurosurgical Associates, in consultation at the request of Dr. McDonald. [R. 244.] Plaintiff's chief complaint was left shoulder and arm pain. [R. 245.] Neuromuscular exam

19

revealed good range of motion of the cervical spine on all maneuvers; his left triceps reflex was reduced compared to the right; and there was no weakness or sensory abnormalities in the upper and lower extremities and no indication of myelopathy. [R. 246.]  X-ray studies were reviewed and an MRI showed left sided disc ruptured at C6-7. [*Id*.]  Dr. Khoury noted Plaintiff had very week triceps on the left. [*Id*.] Plaintiff was seen on numerous occasions by Dr. Khoury after he performed cervical fusion on Plaintiff on May 8, 2006. [R. 247–49, 253–55.]  On October 30, 2006, Dr. Khoury indicated Plaintiff could return to light duty work with no lifting greater than 20 pounds and no reaching above his shoulder. [R. 249.]  On December 11, 2006, Plaintiff returned to Dr. Khoury, nine months post op cervical fusion, with no arm pain, but with still some moderate neck and interscapular pain. [*Id*.]

Dr. Khoury sent Plaintiff for a functional capacity evaluation ("FCE") so that he could make a decision about rating and releasing him. [*Id*.]  On January 4, 2007, the FCE was performed by A.H. "Trey" Ginn, III ("Ginn") with the Rehabilitation Centers of Charleston. [R. 260.] Ginn found Plaintiff was able to work at the medium-heavy physical demand level for an 8 hour day. [*Id*.]  On January 22, 2007, Dr. Khoury indicated that he would see Plaintiff back in a month and rate and release him, and then have him return for light duty work. [R. 249.]

On March 5, 2007, Plaintiff returned to Dr. Khoury, one year after post op cervical fusion, still complaining of neck and interscapular pain. [R. 250.]  On exam, Dr. Khoury noted no weakness of the upper extremity muscle groups, although Plaintiff had limited range of motion of the cervical spine on all maneuvers without limited range of motion of

his shoulders. [*Id.*] Dr. Khoury ordered another MRI to make sure there were no new problems. [*Id.*] Dr. Khoury noted that, assuming the scan is negative, Plaintiff had reached maximum medical improvement ("MMI") and will have a 15% impairment to his cervical spine, will be unable to return to heavy duty work, can lift up to 30 pounds, and should avoid reaching above his shoulders. [*Id.*] During Plaintiff's visit on March 19, 2007, Dr. Khoury noted his scan showed nothing new. Again, Dr. Khoury found Plaintiff had reached MMI with a 15% impairment to his cervical spine; was unable to lift anything above 30 pounds; was not to reach above his shoulders; and these were permanent restrictions. [*Id.*]

### *Dr. Netherton's Restrictions*

Plaintiff saw Dr. Netherton for treatment between February 2009 and March 2011. [*See* R. 410.] Treatment notes dated March 31, 2010, indicated that Plaintiff advised Dr. Netherton that he had been going to Voc Rehab and had recently attained a job; unfortunately, the job involved him lifting heavy objects and a significant amount of dexterity type work. [R. 354.] Treatment notes also indicated that Dr. Netherton did not feel Plaintiff was a suitable candidate for the job and that Voc Rehab suggested he possibly pursue disability because of his difficulty with pain doing any type of strenuous work. [*Id.*] In June 2010, Dr. Netherton noted that Plaintiff's pain was a 3/10, that walking and bending made his pain worse, and that rest and medication helped his pain. [R. 417.] Plaintiff had pain with motion in the upper extremities but had good grip strength in both hands and intact sensation; he also ambulated into the office without difficulty. [*Id.*]

Again, in December 2010, Dr. Netherton noted that Plaintiff had cervical and post laminectomy surgery syndrome with cervical radiculitis and degenerative disc disease. [R. 414.] Dr. Netherton noted that he would like to pursue injections in the future, but that Plaintiff did not have funds to pursue this option. [*Id*.] Dr. Netherton noted that Plaintiff had significant impairment in mobility and should pursue social security disability. [*Id*.]

On March 30, 2011, Dr. Netherton completed a Medical Source Statement regarding his opinion of Plaintiff's abilities despite his impairments. [R. 428–32.] Dr. Netherton indicated that his initial visit with Plaintiff was July 16, 2007, and that he had seen Plaintiff every 1–3 months. [R. 428.] Dr. Netherton noted that Plaintiff had failed spinal surgery syndrome, cervical degenerative disc disease, and cervical plexus disorder; that his symptoms included neck, shoulder, and arm pain, with weakness in the left arm; and that he suffered from depression and sleep disorder. [*Id*.] Dr. Netherton indicated that Plaintiff's pain was characterized as daily neck and shoulder pain, constant ache worsened by activity and motion, and burning pain in the left arm. [*Id*.] Positive objective signs of Plaintiff's impairments included reduced range of motion in the left arm/shoulder; impaired sleep; tenderness; muscle weakness; and cervical crepitis with flex/extension. [*Id*.] Dr. Netherton also noted that emotional factors, such as depression, contributed to the severity of Plaintiff's symptoms. [R. 428–29.] Dr. Netherton noted that Plaintiff's ability to deal with work stress was severely limited and that side effects from his medication (chronic sedation and GI issues) had implications for working as well. [R. 429.]

With respect to Plaintiff's ability to perform certain activities on a regular and continuing basis, meaning 8 hours a day for 5 days a week, or equivalent work schedule, Dr. Netherton indicated that Plaintiff:

- can sit for 1 hour before alternating postures and standing or walking about for at least 15 minutes

- can sit for 2 hours but does not need to elevate either leg while siting

- will need to lay down or recline in supine position for 15 minutes after standing or walking about for the maximum continuous period

- can stand/walk for a cumulative total of 3 hours during an 8 hour day

- will need additional morning break, a lunch period, and afternoon break scheduled at approximately 2 hour intervals

- will need to rest, lying down or reclining in a supine position, 5 hours out of an 8 hour work day

- can occasionally lift/carry 5 pounds but never more

- can never balance when standing/walking on level terrain

- can occasionally stoop, bending the body downward and forward by bending the spine at the waist

- can occasionally posture his neck in a forward flexion posture, but never backward or rotate to the right or left

- can occasionally reach with his right hand but never with his left

- can occasionally handle with his right and left hands

- will be absent from work more than 3 times a month due to his impairments

- has had impairments and persisted with these restrictions since July 16, 2007

[R 429–32.]

On November 26, 2013, Dr. Netherton completed another form entitled Medical Source Statement of Ability to Do Work-Related Activities.  [R. 983–88.]  In this form, Dr. Netherton indicated Plaintiff could:

- lift/carry up to 10 pounds but never more, based on clinical findings from his cervical MRI with DDD, post surgical findings, stenosis, and motion impairment

- sit for 2 hours and stand/walk for 1 hour at a time without interruption during an 8 hour work day and, due to pain, he may need to get up and change positions

- ambulates without a cane

- never reach overhead or push/pull with his right or left hand, but can occasionally reach, handle, finger or feel with both his right and left hands

- frequently operate foot controls with both his right and left feet

- never climb ladders and scaffolds, and occasionally climb stairs and ramps, balance, stoop, kneel, crouch and crawl (based on his MRI and clinical exam)

- never be exposed to unprotected heights, moving mechanical parts, extreme cold/heat or vibrations; only occasionally be exposed to operating a motor vehicle, humidity and wetness, and dust/odors/fumes or pulmonary irritants

- can shop; travel without a companion; ambulate without assistance; walk a block at a reasonable pace on rough or uneven surfaces; use standard public transportation; climb a few steps at a reasonable pace with the use of a single hand rail; prepare a simple meal and feed himself; care for his personal hygiene; and can sort/handle paper/files

- takes pain medication and has some sedation; has chronic depression which effects all actions

- limitations will last for 12 consecutive months

[*Id*.]

### ALJ's Weighing of Medical Evidence

The ALJ explained his weighing of the medical evidence as follows:

> As for the opinion evidence, I note that there is inconsistency with regard to the claimant's limitations. As noted above, a January 2007 Functional Capacity Evaluation resulted in a finding that the claimant was capable of performing medium-heavy work (Exhibit 3F). Treating neurosurgeon, Dr.

Khoury, gave the claimant a permanent lifting limit of 30 pounds with no reaching above shoulder level (Exhibit 3F). I conclude, however, that claimant would be able to reach occasionally over the shoulder as he had only a 15% impairment of the cervical spine.

Treating physician, Dr. Netherton, completed a medical source statement dated March 30, 2011 indicating that the claimant is limited to lifting 5 pounds, standing and walking for 3 hours, and sitting for 2 hours in an 8-hour workday. In addition, the claimant would require rest breaks in addition to regular breaks and lunch, and would be likely to miss more than three days of work per month due to his impairments (Exhibit 22F). In November 2013, Dr. Netherton completed another medical source statement indicating that the claimant was capable of lifting and/or carrying up to 10 pounds, standing for one hour, walking for one hour, and sitting for two hours in an 8-hour workday. However, despite the restrictive limitations, the doctor indicated that the claimant was able to perform activities such as shopping, travel without a companion for assistance, ambulating without using a wheelchair, walker, or two canes or crutches, walking a block at a reasonable pace on rough or uneven surfaces, using standard public transportation, climbing a few steps at a reasonable pace, preparing a simple meal, caring for personal hygiene, and sorting, handling, and using paper/files (Exhibit 36F).

Pursuant to the Court Order, I have considered the treating physician rule with respect to Dr. Netherton's opinion. 20 CFR 404.1527 provides that a treating source opinion on the issue of the nature and severity of impairments is entitled to controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record. As noted above, Dr. Netherton's opinion is not supported by his treatment records, consistent with other opinions of record, and does not take into consideration the claimant's non-compliance, lack of motivation, and reported dependence on pain medication.

Instead, I give more weight to the opinions of the Functional Capacity Evaluation, Dr. Khoury, and Dr. Etikerenste, who concluded that the claimant had limitations, but was not totally and permanently disabled.

> I give great weight to the opinion of state agency medical consultant, William Cain, M.D., who provided the most recent opinion from the state agency (Exhibit 19F). I find this opinion consistent with the medical evidence except for the limitation regarding working around hazards, which I find not supported by the evidence of record. The earlier state agency opinions have also been considered and given some weight, but the more recent assessment is most consistent with the entire medical record.

[R. 519–20.]

### Discussion

The ALJ stated that, pursuant to this Court's February 7, 2014, Order remanding the action, he considered the Treating Physician Rule with respect to Dr. Netherton's opinion. [R. 520.]   Under the provisions of the Treating Physicians Rule, the Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions.   SSR 96–2P, 61 Fed.Reg. 34490, 34492 (July 2, 1996).   The Commissioner generally accords more weight to treating physicians, recognizing that their clinical insights gathered from hands on treatment provides an "unique perspective" that cannot be obtained from a simple review of the written record or from one time examinations. §404.1527(c)(2). Additional weight is provided to treating physicians with a long treatment history with the claimant and those with a medical specialty. §404.1527(c)(1), (2)(i), (5).   Further, since the Commissioner recognizes that the non-examining and non-treating expert has "no treating or examining relationship" with the Plaintiff, she must consider their supporting explanations for their opinions and "the degree to which these opinions consider all of the pertinent evidence [], including opinions of treating and examining sources." §404.1527(c)(3).

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c).  *See Craig*, 76 F.3d at 590.

Although the ALJ was given a second opportunity to properly apply the Treating Physician Rule, this Court finds that he did not.  Citing the presence of inconsistencies with regard to Plaintiff's limitations in the opinion evidence, the ALJ appears to have given "more" weight (*although with expressly rejecting part of it*) to the opinion of Plaintiff's neurosurgeon, Dr. Khoury, and little or no weight (*not expressly stated by the ALJ*) to the opinion of Dr. Netherton, Plaintiff's treating pain specialist from the Spine Institute, with no explanation of the inconsistencies he relied on to disqualify their opinions.  The ALJ decided to give great weight to the opinion of a state agency medical consultant, Dr. Cain, and "more weight" to the FCE evaluation, Dr. Khoury, and Dr. Etikerenste's finding Plaintiff not totally disabled.  [R. 519–20.]  Curiously, Dr. Etikerenste's consultative exam makes

27

no express mention of Plaintiff's ability to reach overhead. [*See* R. 920–22.] The ALJ also gave great weight to the opinion of Dr. Cain without explaining his consideration of evidence of record from Plaintiff's treating physicians which appears to contradict Dr. Cain's findings of no weakness in the upper extremities and no limited ROM in the shoulders. Further, the ALJ did not discuss that Dr. Cain referenced Dr. Khoury's limitation with respect to no reaching above the shoulders, and was in general agreement with the statement, but decided to not give it full weight "due to the date of the statement" rather than in reliance on other supporting medical evidence of record. [R. 406.]

The ALJ also rejected Dr. Khoury's limitation to no overhead reaching based on the ALJ's opinion that a 15% impairment to the cervical spine (as found by Dr. Khoury) equates to an ability to occasionally reach over the shoulder but without citing to a medical opinion or evidence supporting this conclusion. This determination by the ALJ seems to be an improper substitution of his own lay opinion for that of an examining doctor. *See Bruce v. Colvin*, C/A No. 8:15-261-BHH-JDA, 2016 WL 674952, at *15 (D.S.C. Jan. 29, 2016), *adopted by* 2016 WL 640688 (D.S.C. Feb. 18, 2016).

Additionally, the ALJ rejected Dr. Netherton's limitation to no overhead reaching based on his alleged failure to take into consideration Plaintiff's non-compliance, lack of motivation, and dependence on pain medication. [R. 520.] How these findings factor into Plaintiff's physical limitation to no overhead reaching remains a mystery because the ALJ failed to explain the connection.

While there is evidence in the record supporting the ALJ's opinion that Plaintiff could engage in occasional overhead reaching, the fact that his treating physicians opined to the contrary cannot be summarily dismissed without some explanation by the ALJ as to his

28

weighing of this evidence and/or his identifying the treating physicians' treatment records that allegedly contradicted these findings.  The ALJ's decision here effectively turns the Treating Physician Rule on its head, deferring to the opinions of physicians who had never seen Plaintiff in person, or who examined him on one occasion, while dismissing the opinions of those who had examined and treated him dozens of times over many years. For these reasons, the Court cannot find that the ALJ's treatment of the medical opinions of record is supported by substantial evidence.

**Plaintiff's Remaining Arguments**

Upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be REVERSED pursuant to sentence four of 42 U.S.C. § 405(g), and the case is REMANDED to the Commissioner for further administrative action consistent with this Report and Recommendation.

**IT IS SO RECOMMENDED**.

September 2, 2016                              s/Jacquelyn D. Austin
Greenville, South Carolina               United States Magistrate Judge